IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HOT NEW PRODUCTS, INC., d/b/a FITNESSZONE; | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 98-JEO-1730-S ) |
| TROTTER, INC., and CYBEX INTERNATIONAL, INC., | ) ) ) ) |
| Defendants. | ) |

**ENTERED**

**SEP - 3 2004**

## MEMORANDUM OPINION

This case is before the court on two post-trial motions. On February 13, 2004, the plaintiff filed a motion for new trial (doc. 166) asserting that (1) the court gave two erroneous jury instructions; (2) the court erroneously excluded a portion of a witness' testimony; (3) the jury's finding of no conspiracy was against the great weight of the evidence; and (4) juror misconduct tainted the verdict. On April 24, 2004, the defendant filed a motion to strike the affidavits that the plaintiff filed after its motion for a new trial (doc. 176).

## MOTION TO STRIKE AFFIDAVITS

The parties have filed various affidavits in support of their arguments on the issue concerning the conduct of a particular juror. The plaintiff has filed affidavits of (1) Terry J. Kelley, a paralegal with the firm representing the plaintiff; (2) John E. Goodman, one of the plaintiff's attorneys;[1] (3) Diane T. Sparks, a juror; (4) Darien Satisfield, a juror; (5) Gene Brasher, a previous owner of the plaintiff corporation and a witness at trial;[2] and (6) Thomas

---

[1] There are two affidavits from Goodman and they are located at documents 166 and 168 in the court's file. Kelley's affidavit is also located at document 166.

[2] The affidavits of Sparks, Satisfield, and Brasher are located at document 168.

178

Warburton,[3] another of plaintiff's attorneys. The plaintiff has also filed the sworn declaration of Sandra Gamble, a juror, and certain pages from the voir dire proceedings.[4] The defendant has filed affidavits from (1) Thomas McCrary, the juror who engaged in the allegedly impermissible conduct; (2) Samuel Freeman, a juror; and (3) Darien Satisfield.[5]

## Timeliness

The defendant moves to strike the affidavits filed February 25, 2004, of Diane T. Sparks, Darien Satisfield, John E. Goodman, and Gene Brasher[6] and the affidavit and sworn declaration filed March 30, 2004, of Thomas Warburton and Sandra Gamble[7] due to the fact that they were not filed with the plaintiff's motion for new trial as required by FED. R. CIV. P. 59(c).[8] (Doc. 176 at 1). Out of an abundance of caution, the court has considered the affidavits despite their apparent lateness. Therefore, the defendant's motion to strike will be denied.

## Improper Hearsay Testimony

The plaintiffs filed three affidavits based on conversations that either the plaintiff's counsel, or a paralegal for the plaintiff's counsel's firm, had with individual jurors. Those

---

[3] Warburton's affidavit is located at document 175.

[4] Mr. Warburton's affidavit and Ms. Gamble's sworn declaration are located at document 175.

[5] These affidavits are located at document 172.

[6] These are the affidavits contained in document 168.

[7] These are the affidavits contained in document 175.

[8] FED. R. CIV. P. 59(C) provides:

When a motion for new trial is based on affidavits, they shall be filed with the motion. The opposing party has 10 days after service to file opposing affidavits, but that period may be extended for up to 20 days, either by the court for good cause or by the parties' written stipulation. The court may permit reply affidavits.

FED. R. CIV. P. 59(C).

affidavits are pure hearsay and, as such, the court *sua sponte* strikes them from the record.[9] The affidavits that the court will not consider are from Terry J. Kelley and two from John E. Goodman.[10]

## MOTION FOR A NEW TRIAL

As noted in the introduction, the plaintiff moves for a new trial on several grounds. First, the plaintiff asserts that the court gave two erroneous jury instructions. (Doc. 166 at 1). Second, the plaintiff claims that the court erroneously excluded a portion of Marc Snowhite's testimony. (*Id.* at 2). Third, the plaintiff asserts that the jury's finding of no conspiracy was against the great weight of the evidence. (*Id.* at 4-9). Fourth, the plaintiff argues that juror misconduct "poses a reasonable possibility of prejudice" to the jury's ultimate finding in this case. (*Id.* at 9-12). For the reasons set out below, the court finds that the plaintiff's motion is due to be denied.

### Erroneous Jury Instructions

The plaintiff first argues that the court erred by requiring the plaintiff to specifically name the dealers whom it alleged were part of a conspiracy with the defendant. (Doc. 166 at 1). The plaintiff argues that

> . . . requir[ing] [FitnessZone] to specifically name those dealers or individuals whom it alleged were parties to the conspiracy or agreement with Trotter was inconsistent with the governing law of conspiracy (even in the more stringent context of criminal conspiracies). *See, e.g., U.S. v. Martinez*, 96 F.3d 473, 477 (11th Cir. 1996) ("[w]e have repeatedly held that a defendant may be convicted of conspiring with 'persons unknown,' if sufficient evidence supports the existence of involvement of such persons . . . . [T]o convict . . . it was not

---

[9] In its opposition to the plaintiff's motion for new trial, the defendant points out that the affidavits are hearsay. However, the defendant has not moved to strike the affidavits on that basis.

[10] Ms. Kelley's affidavit is located at document 166. Mr. Goodman's affidavits are located at documents 166 and 168.

necessary for the evidence to be sufficient to allow the jury to identify with particularity the other conspirator or conspirators. It is enough that the evidence was sufficient to show that [the defendant] conspired with someone."); *accord United States v. Rodriguez*, 765 F.2d 1546, 1552 (11th Cir. 1985). Requiring FitnessZone to identify particular individuals or companies thus placed a greater burden of proof on FitnessZone than that required under the law; the charge also could well have created jury confusion as to other, proper portions of the charge, such as that addressing the oft-times secret nature of conspiracies and the instruction that conspiracy may be shown by circumstantial evidence and by inferences from proven facts.

(*Id.* at 2). The court's instruction to the jury was as follows:

> There can be no conspiracy unless more than one person is involved. The very word "conspiracy" means "together with." In order to recover on its Section I claim, Plaintiff has to prove that Defendant conspired with at least one other separate person or corporation, that is, you must unanimously agree that the defendant conspired with at least one of the following: Richard Miller, The Gym Source, Mark Snowhite, Nordic Fitness (Houston), Doug Kortemeyer, Fitness Equipment Inc., The Xercise Store, Chip Hunnings, All About Fitness, Leo Clark, Fitness Lifestyles, Howard Kutler, Nova Health Company, Greg Scheller, Scheller's Fitness and Cycle, David Haislip, Fun-'N-Fitness.

(Doc. 174 at 11).[11]

Prior to giving the instruction to the jury, the plaintiff was afforded every opportunity to include each and every person or entity that it alleged could have been involved in a conspiracy with the defendant. The plaintiff offered no evidence that an alleged conspiracy could have possibly existed between the defendant and any other person or entity other than those set out in the charge. As the defendant points out in its opposition to the plaintiff's motion, the only other alleged co-conspirators that were not included in the charge were dealers who did nothing more than sign the DPSP acknowledgment form, whereas the individuals and entities that were set out in the charge both signed the DPSP acknowledgment form <u>and</u> undertook some other affirmative action. The jury did not find that those who both signed the form and undertook some other

---

[11]Document 174 is the court's "Instructions to the Jury" in its entirety.

4

action were part of a conspiracy; certainly then, the plaintiff could not have been prejudiced by the omission of individuals and entities that did less.

Additionally, the cases cited by the plaintiff are criminal cases in which the names of the alleged co-conspirators were unknown to the prosecution. Absent case law on point, the court declines to find that those cases stand for the proposition that a party who has access to alleged co-conspirators names is not required to prove a conspiracy between the defendant and those known alleged co-conspirators.

Next, the plaintiff argues that the court erred by instructing the jury "that plaintiff could prove an illegal agreement or conspiracy by showing that defendant's dealers were coerced into agreeing with the maximum discounts, but only if such coerced dealers thereafter in fact maintained such pricing." (Doc. 166 at 2). Specifically, the plaintiff argues that the given charge "overly emphasized the necessity (not required under the law) of dealers maintaining the maximum discounts." (*Id.*). The relevant portion of the actual instruction given by the court was:

> A manufacturer may use persuasion, argument, or pressure to get a dealer to charge its suggested retail prices. Similarly, a manufacturer may inform a dealer that its policy is to terminate dealers who do not follow the manufacturer's suggested resale prices. On the other hand, a conspiracy to charge resale prices can be formed if a manufacturer uses coercion to force a dealer to charge its suggested resale prices, provided that the dealer in fact charges the resale prices. However, a dealer cannot be coerced into conspiring with a manufacturer unless the dealer actually abides by the manufacturer's suggested resale prices.

(Doc. 174 at 13). The court also instructed the jury that

> [a] combination or conspiracy is formed whenever two or more persons or corporations knowingly join together to accomplish an unlawful purpose by concerted action. The essence of a combination or conspiracy is an agreement between two or more persons or corporation to violate or disregard the law. However, the evidence in the case need not show that the members of an alleged

> conspiracy entered into any express or formal agreement.
>
> . . . .
>
> What the evidence must show is that the defendant and its co-conspirator or co-conspirators knowingly came to a common and mutual understanding to accomplish or to attempt to accomplish an unlawful purpose. This required more than a showing that the dealer conformed to the suggested price. It means as well that evidence must be presented both that the dealer communicated its acquiescence or agreement, and that this was sought by the manufacturer.

(Doc. 174 at 10-11). The court did not instruct the jury that it could only find a conspiracy if the defendant used coercion to fix prices; instead, it gave the jury an example as to how a conspiracy could be formed. The court properly instructed the jury on the definition and elements of a combination or conspiracy. The court declines to accept that the jury may have been confused by the portion of the charge regarding coercion.[12] On review, the court remains convinced that "the jury instructions and verdict form, considered as a whole, were sufficient so that the jurors understood the issues and were not misled." *United States v. Poirer*, 321 F.3d 1024, 1032 (11th Cir. 2003).

### Erroneous Exclusion of a Portion of Snowhite's Testimony

The plaintiff next argues that it is entitled to a new trial because the court erroneously excluded a portion of Marc Snowhite's testimony wherein he declined to answer a question regarding whether he had participated in a conspiracy because his answer could be "incriminating" on the basis that it would have been entitled to an "adverse inference" charge had the court allowed the testimony. (Doc. 166 at 3).

At the outset, the court notes that the plaintiff has failed to offer any authority from this

---

[12]The instruction, as given, was an accurate statement of the law. *See United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S. Ct. 503, 4 L. Ed. 2d 505 (1960).

circuit where an adverse inference charge has been given regarding a non-party witness's testimony. Instead, the plaintiff primarily relies upon *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3rd Cir. 1986), for the proposition that "[a]llowing [Snowhite's] testimony would have entitled FitnessZone to an instruction that the jury could have drawn a negative inference from Snowhite's invocation of the Fifth Amendment." (Doc. 166 at 4). The court disagrees. After appellate review of the district court's admission of the non-parties' Fifth Amendment invocation, the Third Circuit held that "the admission as evidence of a non-party's invocation of the Fifth Amendment privilege is not *per se* reversible error." *RAD Servs.* 808 F.2d at 275. Finding that something is not *per se* reversible error is hardly the same as finding something proper. The Third Circuit, after rationalizing why, in that case, the admission of the non-parties' invocation of that privilege was not reversible error, further noted that

> [u]nder these circumstances, the jury reasonably could have inferred from their refusals to testify that [the non-party witnesses, who were a RAD official and a managing RAD employee] participated in the alleged dumping scheme. We recognize, of course, the need to guard against "sharp practices" which some might twist our holding to invite. (citation omitted). The trial judge maintains discretion under FED. R. EVID. 403 to control the way in which non-party claims of privilege reach the jury.

*Id.* at 277-78.

Under the facts and circumstances of this case, this court found, and maintains, that allowing Snowhite's testimony would have been unduly confusing and prejudicial under FED. R. EVID. 403. As such, the court declines to grant the plaintiff a new trial on that basis.

### Jury's Finding of No Conspiracy

The plaintiff next argues that it is entitled to a new trial because the jury's finding of no conspiracy was against the great weight of the evidence:

7

> Specifically, because FitnessZone's proof that Gym Source and Trotter entered into an agreement to fix the resale prices of Trotter equipment was uncontroverted, the jury's conclusion that no price-fixing conspiracy existed (through its answer in the negative to the first special interrogatory) is contrary to the great weight of the evidence.

(Doc. 166 at 4). To the contrary, the court finds that the jury's verdict was supported by the evidence and declines to grant a new trial on that basis.

### Juror Misconduct

Finally, the plaintiff argues that juror misconduct may have tainted the jury's verdict in this case. (Doc. 166 at 9-10). As background, the court notes that one of the defendant's attorneys announced during *voir dire* that one of the former owners of FitnessZone, Gene Brasher, played football at the University of Alabama under Coach Paul "Bear" Bryant. One of the jurors, Thomas McCrary, also played football at Alabama under the same coach. During juror interviews after the verdict was returned in this case, the plaintiff's attorneys learned that Mr. McCrary had looked Brasher up in a book listing lettered athletes at the University of Alabama and did not find him. Mr. McCrary then announced to the other jurors during deliberations that Mr. Brasher had not played football at the University of Alabama. (Doc. 166 at 10). The plaintiff argues that this "improper extrinsic information went directly to the issue of Mr. Brasher's credibility." (*Id.*).

Both parties offered affidavits regarding the extent to which the jury's decision was influenced by this information.[13] The court finds that the affidavits do not reveal the requisite

---

[13]Relevant portions of the affidavits submitted by the plaintiff are as follows:

> During the jury's deliberations, . . . McCrary, told the jury members that he had looked up in a book he had at home whether or not Gene Brasher, one of FitnessZone's witnesses, had played football at Alabama. Mr. McCrary told the jurors that Mr. Brasher had lied, that he had not played football at Alabama. Mr. McCrary was very insistent that Mr. Brasher had not been truthful. In fact, in response to Mr. McCrary telling the members of the jury that Mr. Brasher was a liar, I told Mr. McCrary that it was improper to

8

prejudice to the plaintiff to warrant a new trial. The most prejudicial information the plaintiff offers is that of Sandra Gamble who states that the information was "part of the reason that [she]

---

> consider this subject in our deliberations, and that this information was not important. Mr. McCrary responded to my statement by stating that his investigation into Mr. Brasher's football playing "was important to him."
>
> Additionally, it appeared to me that Mr. McCrary's opinion that Mr. Brasher was a liar, and his statements to the jury regarding his research into Mr. Brasher's football background were important to juror Samuel Freeman. This is because in response to Mr. McCrary's statements about Mr. Brasher, Mr. Freeman stated "yeah" a number of times. Further, Mr. Freeman made clear to me during deliberations that the likeability and credibility of each side's witnesses was the most important consideration to him.

Affidavit of Diane Sparks, located at document 168.

> During the jury deliberations, . . . Mr. McCrary told the jurors that he could not find Mr. Brasher listed in the book . . . When he was discussing this, Mr. McCrary stated that Mr. Brasher had no credibility with him.

Affidavit of Darien Satisfield, located at document 168.

> . . . Mr. McCrary told the jurors that Mr. Brasher had lied, that he had not played football at Alabama, and that Mr. Brasher was just involved in the lawsuit "for the money." Mr. McCrary was very insistent that Mr. Brasher had not been truthful. I felt the case was a very close case, and learning that Mr. Brasher had lied affected my view of Mr. Brasher's credibility and of FitnessZone's case. What Mr. McCrary told me about Mr. Brasher was part of the reason that I chose to side with Trotter.

Declaration of Sandra Gamble, located at document 175.

> Additionally, the defendant offered the following:
>
> My name is Thomas McCrary. . . . During the trial, I looked up on a website the names of persons who had lettered in football at the University of Alabama. I did not find Gene Brasher's name. I told my fellow jurors this. The information had no impact whatsoever on my verdict. I would be very surprised if this information had any impact whatsoever on any other juror's verdict. We reached the verdict we reached because FitnessZone simply did not present sufficient evidence of a price-fixing conspiracy. We considered the Court's jury instructions very carefully and reviewed every document painstakingly. We could not find a price-fixing conspiracy. Whether or not Mr. Brasher did or did not play football at Alabama does not change the fact that the evidence simply did not support a finding of a price-fixing conspiracy. If I had found Mr. Brasher's name on the website I checked, it would have made no difference on my verdict.

Affidavit of Thomas McCrary, located at document 172.

> My name is Samuel Freeman. . . . The information discovered by my fellow juror . . . regarding Gene Brasher . . . had no bearing whatsoever on my verdict. I would have reached the same verdict anyway without that information. Those people (FitnessZone's lawyers) couldn't prove anything to me.

Affidavit of Samuel Freeman, located at document 172.

> My name is Darien Satisfield. . . . The information discovered by my fellow juror . . . regarding Gene Brasher . . . had no effect whatsoever or my verdict. I told Mr. Goodman this. All that mattered to me was the Court's jury instructions, I could not find evidence to show that a price-fixing conspiracy had occurred.

Affidavit of Darien Satisfield, located at document 172.

9

cho[se] to side with Trotter."

The fact that one juror testified that her verdict was, in part, based upon Mr. McCrary's statement, is not sufficient under the present circumstances to warrant a new trial. FitnessZone bears the burden of establishing the "reasonable possibility of prejudice" by a "preponderance of credible evidence." *BankAtlantic v. Blythe Eastman Paine Webber*, 955 F.2d 1467, 1472 (11th Cir. 1992). This it has not done. The issues surrounding Brasher's credibility had no effect on whether a price-fixing conspiracy existed. To find a price-fixing conspiracy, the jury had to find that Trotter and another company or person joined together to accomplish an unlawful purpose by concerted action. Brasher's testimony was not sufficiently relevant or probative on that issue to support a grant of relief. Had the jury found that a conspiracy did exist, then Brasher's credibility would have been relevant to the whether Trotter wrongfully terminated FitnessZone. However, the jury found no conspiracy.

## CONCLUSION

Because the court opted to consider the untimely-filed affidavits offered by the plaintiff, the defendant's motion to strike those affidavits (doc. 176) is due to be denied. The court finds no error in its jury instructions or in its suppression of that portion of Marc Snowhite's testimony where he invoked the Fifth Amendment privilege. Additionally, the court finds that the jury's verdict was consistent with the great weight of the evidence. Finally, the court finds a lack of prejudice in the extrinsic information provided to the jury by juror McCrary. Although McCrary's actions were improper, the court cannot find prejudicial error that would warrant a new trial in this case. Accordingly, for the reasons set out above, the court finds that the plaintiff's motion for a new trial (doc. 166) is due to be denied.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

**DONE**, this 2d day of September, 2004.

JOHN E. OTT
United States Magistrate Judge